Green, J.
delivered the opinion of the court.
The defendant was indicted in the circuit court of Obion county, for an assault with intent to ravish his daughter, Mar- *590 thá Jane Williams. He was found guilty by the jury, and sentenced to the penitentiary for ten years. He moved for a new trial, which was refused. He also moved in arrest of judgment, which motion was overruled, and he appealed to this court.
The indictment is in the following words:—
State of Tennessee, ) June term, circuit court, for the year of our
Obion County, ) Lord eighteen hundred and forty-seven.
The grand jurors of the State of Tennessee, elected, em-panneled, sworn, and charged to enquire, in and for the body of the county of Obion aforesaid, upon their oath aforesaid, present,, that John Williams, late of said county, laborer, on the fourth day of April, in the year of our Lord one thousand eight hundred and forty-seven, with force and arms, in the county of Obion aforesaid, in and upon the body of one Martha J. Williams, in the peace of God then and there being, an assault did make, and her the - said Martha J. Williams then and there did beat, wound and ill-treat, with intent, her the said Martha J. Williams, feloniously, violently, forcibly, and against her will, then and there feloniously to ravish and carnally know, and other wrongs, to the said Martha J. Williams, then and there did, to the great damage of her the said Martha J. Williams, against the form of statutes in such case made and provided, and against the peace and dignity of the state.
Isaac Williams, Attorney General of the ninth circuit of the State.
On the trial, Martha J. Williams was introduced as a witness for the state, who proved that the defendant is her father; that about four months before the trial, and about eight months after her mother’s death, the defendant commenced making propositions to have sexual intercourse with her, telling her that other men who had daughters did so; that he wanted to do so too, and that if she disclosed the fact, he would kill *591 ber. Witness was about seventeen years old. She stated, that her father, the defendant, had made frequent attempts to have intercourse with her, and had some times tried, as often as two or three times a night, by approaching her, bedside, and attempting to get into her bed,, but she always refused. She stated, that about three or four months before the 4th of April, 1847, the prisoner threw her on the bed, and attempted to pull up her clothes, and said that he intended to do it, and that his breeches were down; that at each of these attempts she hallooed, and her little brother came in and he desisted. She stated, that on the evening of the 4th of April, 1847, the defendant told her he intended to do it that evening, and that he intended to force her that night to have sexual intercourse with him; that he cursed her, and threatened to come to her bed that night; that he had been after her all that evening, so that she could not stay in the house for him, but had to go and stand in the road. The witness stated, that she communicated these threats to her sister, Mrs. F. D. Heliums, who resided near her father’s. She stated, that on that night, the 4th of April, 1847, her father, the defendant, came to her bed in his shirt only, and wished to get in bed with her, and said he would do it; commenced pulling down the cover; witness held on the cover, refusing to permit him to come into her bed; she then hallooed, at which time she heard Fed. Jones' coughing, (who was lying in a room, separated from her’s by a passage,) and he retired. In half an hour he returned again, attempting to get into her bed, she refused; then he began pulling down the cover, his language being mild and persuasive, not rough and harsh, she all the while holding to the' cover, and in his efforts to pull it down, he touched her bosom with his hand, and she hallooed, and her brothers-in-law, Lane and Heliums, and others, rushed in and seized the prisoner in her room.
*592 The state introduced. America Williams, daughter of the defendant, who stated that she was sixteen years old — that on the night of the 4th of April, she was not at home, but at her sisters, Mrs. H. Helium’s, that often' previous to the 4th of April, the defendant had at a late hour of the night come to the bed where she and her sister, Martha J. lay, with nothing on but his shirt, and pulled the cover off her sister, and attempted to get in bed with her, and her sister would halloo, and then he would go away. One night he came as often as three times.
The state introduced Mr. Lane, who stated that he, Summers, Heliums, Murphy and some one or two others, having heard that the defendant was in the habit of making attempts to go to bed to his daughter, Martha J. Williams, went to the house of the defendant on the 4th of April, 1847, and secreted themselves, that about ten o’clock that night, the defendant got up and walked through the passage, and into the room where Martha J. Williams slept. Soon after the defendant entered the room, they heard her cry, oh! daddy — and witness thought he heard her crying. About this time, Jones, who was lying in another room, commenced coughing, and defendant left the room. He remained out about half an hour, and until every thing became quiet, when he returned to the room where Martha was lying. Soon after the defendant went in, witness (heard her crying — he and the other men immediately rushed to the door, and met the defendant near the foot of the bed, the foot of the bed being nearest the door, and witness brought him to the door, where the others seized him. The defendant denied having been in the room, and when reproached, he said that Martha was not his daughter — the defendant was in his shirt, and somewhat intoxicated. Summers, Hel-iums and Murphy made the same statement made by Lane.
Defendant introduced Fed. Jones, who proved that he had *593 been living with the defendant two years, and was at his house on the night of the 4th of April, 1847, and had never seen any improper intercourse between the defendant and his daughter; that sometimes he would curse her, and that he cursed witness too, very often, and he thought nothing of it, as he was in the habit of cursing almost every body. Witness was in the habit of working hard,- and was very tired the night of the 4th of April, and went to bed early and slept soundly, and did not wake until he was roused by the noise that was made in arresting the defendant. The defendant was somewhat drunk that evening.
Martha J. Williams stated, that on the night of the 4th of April, her little brother, seven or eight years old, slept in the room with her, and two small brothers were in the room with Jones, and a negro man was in the kitchen. The prisoner objected to the statement of Martha J. Williams, that he had on a former occasion thrown her on the bed and attempted to pull up her clothes, as incompetent evidence to establish the crime charged to have been committed on the 4th of April, 1847; but the court overruled the objection, and permitted the evidence to go to the jury — to all which the defendant excepted at the time. But the court instructed the jury that they could find the prisoner guilty of the crime charged to have been committed on the 4th of April, 1847, .only, and that .previous acts could only be looked to for the purpose of showing the spirit and purpose which dictated the events of the 4th of April, 1847.-
1. The question is, did the court err in admitting the previous acts of defendant, as evidence of a guilty intent in com-mittingthe act charged in the indictment? .We think he did not.' Where it becomes necessary to prove guilty knowledge on the part of the prisoner, evidence of other offences committed by him, though not charged in the indictment, is admissi *594 ble fot that purpose, 2nd Russ. on Cr. 697 — as if a party be indicted for uttering a forged bank note, knowing it to be forged, evidence may be given of other forged notes of the same kind, uttered by him in order to show his knowledge of the forgery. lb. So if it be material to show the intent with which the act charged was done, evidence may be given of a distinct offence not laid in the indictment, 2 Russ. on Cr. 698. As if, upon an indictment for malicious shooting, it be questionable whether the shooting was by accident or design, proof may be given that the prisoner at another time intentionally shot at the same person, Rex vs. Voke, Russ. and Ry. 531.
In a prosecution for libel, other libels published by defendant, not laid in the indictment, may be given in evidence, to show, quo animo, Has. defendant published that in question, lb. And they may also give in evidence other publications by him, to show; the intent and mind with which the publication in question was made. 2 Russ. on Cr. 655.
In murder the state may prove former grudges and threats, to show malice, and the defendant may prove expressions of good will, and acts of kindness, to show that his intention could not have been what the charge imputes. 1 Ph. Ev. 166. But it is supposed, that in murder, libel, &c., this evidence is admissible, because of the presumption that the state of the mind, by which the party was animated on former occasions, existed also, when he did the act láidin the indictment. And this certainly is the reason for the admission of such antecedent acts. The mind is naturally led to the conclusion, that a party who has been in the habit of publishing libels on another, was in the like state of mind, when he- published the libel in question.
And we suppose that a lustful feeling may get possession of the heart of^a man, regardless of moral restraints, and seek its gratification with some particular woman, until it shall occupy the mind as an abiding feeling as strongly, and urging the party to its gratification with as intense a feeling as is experi *595 enced by the murderer, or the libeller. And if this be true, upon what principle of reason can evidence of other acts be admitted, in cases of murder, libel, &c., and be rejected as incompetent to show the intent with which the assault, in this ease, was made? We can perceive none — unquestionably such evidence has direct relevancy to the question of intention. When a party fox a series of months, by every persuasive, by importunity, by threats, and by force, seeks to gratify his lust for sexual intercourse with a'particular woman, certainly every mind must perceive the force and relevancy of those facts, to explain the intent with which he made an assault subsequently on the same woman. And if the evidence be i’elevant to the issue, it is competent. It will not do to say that those facts are evidence of the defendant’s desire for sexual intercourse, but are not evidence of his intention to gratify -that desire at all events, and against the will of the female. If they have a tendency to establish the intent with which the acts laid in the indictment were committed, they are admissible: whether they establish a purpose only to debauch his daughter, or that he intended to force her to submit tó his wishes, was properly left to the jury by his honor. The court did not err, therefore, in admitting the evidence objected to.
2. Did the court err in refusing to arrest the judgment? The indictment does not charge the assault or intent to hav6 been felonious. It charges only, that the assault and battery were committed with intent feloniously, and against her will, the said Martha J. Williams, to ravish and- carnally know. The word feloniously is used only, in relation to the rape the party intended to commit; but it is not. used to designate the"assault committed as felonious.
The fii’st section of the act of 1829, ch. 23, declares that “all the offences enumerated in that act are feloniousthe 53rd section, that “any person who shall be guilty of commit *596 ting an assault and battery upon any female, with intent, and against her will, to have unlawful carnal knowledge of such' female, shall be imprisioned in the penitentiary not less than two, nor more than ten years.” The first section and the fifty third are to be taken as if the provisions of both were in the same section, and as if the legislature had said in so many words, that an assault and battery, with intent to ravish, shall be felony. The act constituting the crime thus created a felony, must be charged to have been done feloniously — and that crime is the assault and battery, with intent to commit a rape.
The indictment should have charged, that the prisoner “fe-loniously did make an assault,” using the word feloniously in relation to the assault; and to charge, that the party made the assault with intent feloniously to ravish, is to charge a misdemeanor only, with the aggravating circumstance of the intent to commit a felony. Archbold, 47; Jesse vs. State, 2 Dev. & Bat. Rep. 297. We have been referred» to.sec, 72 of the act before cited, which provides, that “indictments for of-fences enumerated in the act which' are offences at common law, shall be good, if the offences be described or charged according to the common law, or according to the statute.” The offence created by the 53d section of the act, does not exist at common law. An assault and battery, with intent to commit a rape, was only an assault and battery at common law, and might or might not be charged with the agravating circumstance. The offence of an assault and battery, with intent to ravish, created by the 53d section of the act is wholly different. Under the statute, the intent to ravish must be charged — by the common law it need not be laid. The case of Peake vs. The State, 2 Humph. Rep., is not applicable to the one before the court. The indictment in that case, was for passing counterfeit coin. That was an offence at com *597 mon law, as well as by statute — with the difference only, that by the statute it was made a felony, and punished differently. But the facts necessary, to be charged at common law, and by the statute, were the same; hence the common law indictment would be good under the statute. But here a new of-fence is created by statute, and is declared to be felony. The indictment must, therefore, be framed upon the statute, by the rules laid down in the common law, for framing an indictment for a felony declared by statute. And these rules require, that the act constituting the offence, must be charged to have been done feloniously.
The indictment in this case is not so framed, and we are constrained to arrest the judgment, and remand the prisoner to be indicted anew.